The next matter on our calendar is United States v. Leung. Good morning, counsel. Good morning. You may proceed. Thank you, Your Honors. Good morning. Federal Defenders by Michelle Gelernt for Tony Leung. May it please the court. This court should grant remand because the district court applied the incorrect legal standard without the benefit of Brooker. In April of 2020, soon after the then Attorney General recognized the COVID-19 pandemic presented an emergency condition within the Bureau of Prisons, Tony Leung, suffering from hypertension, diabetes, and a heart... I'm troubled. I'm troubled, counsel. On the one hand, the government did argue that there was no discretion. On the other hand, Judge Glasser, at some point, acted as if he had discretion. At other times, he did seem to cite what the rule before Brooker was. You said he decided it because he felt he was bound, but I'm not at all sure. I'm not at all sure, but you can say that. Wouldn't the appropriate thing be simply to do a Jacobson remand and ask him without vacating, but simply ask him? Your Honor, our concern with simply a Jacobson remand is that the government has continued to argue that the wrong legal standard applies. The government has continued to say that the court is bound by 1B1.13, and even in its motion papers in this proceeding, argued that Brooker was wrongly decided. Wait a minute. Those are two different arguments, right? You're allowed to file a footnote with us saying that we decided something wrongly, so you can preserve it, or I don't know, you can file a petition for cert, but you're not suggesting to this panel that we should not follow Brooker, right? I didn't read it that way. Is that how you read it? Because we can ask the government if they're asking us that they want us to disobey binding precedent, but I didn't read it that way. Your Honor, I think it's unclear what the government would argue before Judge Glasser, and has continued to argue. They're going to go back and tell Judge Glasser to disobey a binding precedent of the Second Circuit? Your Honor, I suppose I can't speak for the government, but I think it's clear to the extent that Judge Calabrese has raised that at certain points, Judge Glasser has been there a very long time. He knows perfectly well that if there's law of the Second Circuit, he will follow it. And the question, if the question is, what did he do then? And there is doubt about that. That's what I'd like to really know. Is there doubt about what Judge Glasser did in the first instance? So to address your question, I think when you look at the record as a whole, there's not. In his order, Judge Glasser starts the decision on the sort of the merits of whether or not Ms. Filion established extraordinary and compelling reasons by citing to the statute, saying he could only grant a reduction if it was consistent with the policy statements issued by the Sentencing Commission. And I think tellingly, at that point, Judge Glasser left out the word applicable, which indicates that he had no concern or thought at that time, as many district courts did, that 1B1.13 might not be applicable and was in fact outdated as a result of the First Step Act. Can I ask you? No. Go ahead. Go ahead. Sorry, Judge Fuller. No, it's Judge Nardini who wants to answer. So my question is this. And I understand your point that there may be some ambiguity or pretend. Glasser thought he was bound by the policy statement and he can't blame him because his decision predated Brooker. But my understanding is that there was only one basis that Mr. Leung had presented for relief, and that was the COVID basis. Right. So together with his health, in connection with his health. Together with his health. So let me just pause there for a second. So one of my preliminary questions, and I think I know the answer, but I'd like to know your view. There's been a representation by the government that Mr. Leung has since declined to accept a vaccine, despite the fact that there is no indication that it is medically contraindicated. Typically, we will not consider facts that are outside the record. So I guess what I would ask you, first of all, is whether it is your view that that's simply like any other case, a fact outside the record that we should not consider, or whether it's something that you're conceding on appeal that we are permitted to consider. So that's simply a housekeeping matter. Yes, Your Honor. And I would agree with Your Honor. That is a threshold matter. It's something outside the record that this court should consider. But I think the reasons why this court doesn't stand as the fact finder in the first instance, because the government's letter is an assertion standing alone. Although it cites to medical records, there are no medical records included. We don't know what Mr. Leung's health was at the time. We don't know what role of any his prior diagnosis of post-traumatic stress disorder or learning difficulties played. We don't know whether he was counseled by a doctor or merely a corrections officer. So this court is not in a position to say how and whether or not that should be weighed. Can I ask you a second question? I think that's a fair response. Is there a functional difference between, I guess, three options that would lay before us or before your client? One would be, as Judge Calabresi indicated, a Jacobson remand, which might or might not be limited depending on how we frame it. One would be a full remand, which presumably would allow Judge Glasser to expand the record however he saw fit. So the government could put in evidence that he had declined the vaccine. You could put in evidence, I guess, denying that or providing a medical justification. Or the third option is that there are no limits in the First Step Act to a prisoner filing successive motions for release under this section. So just tell me, in your view, what are the functional differences between those forms of relief? And is one preferable or less preferable from the standpoint of your client? Yes, Your Honor. And if I could just briefly address Judge Calabresi's original question, which is, if the record is ambivalent, what should the proper remedy be? And I think the decisions of this court are that in these types of situations where the record is ambivalent, and it's unclear whether or not the judge understood what his discretion was in terms of sentencing, a remand is appropriate. He couldn't have understood the rights given to him by Brooker because that came after his decision. That's true, Your Honor. And many district courts reach that same decision. I can keep going and respond. I see that my time is close. Well, maybe with your indulgence, if I could ask you to just answer my question about the remedies, if there's something that's better or worse from your client's standpoint? I think that from our standpoint, what would be better is to remand for Judge Glasser to be able to render or give Mr. Leung a full hearing under the correct legal standard with the guidance that this court provided in Brooker, and hopefully in this case. Counsel, if that happens, then the question of vaccination would also be before him. And the question of his health and everything, the whole thing then would be open. So that in a way, the suggestion about vaccination makes it more sensible to do a full remand rather than just the Jacobson one. Yes, Your Honor. And then Judge Glasser would be able to take Mr. Leung as he is on the day the case is before Judge Glasser again and consider any evidence the government has and any evidence that we would be able to put forward. So we think that's the remedy that makes the most sense in this case. Thank you, Counsel. You have reserved two minutes for a vote. Thank you very much, Judge. Thank you. Good morning, Your Honors. My name is Drew Roll. I represent the United States and I did below and here today. So, Mr. Roll, I hate to jump in with a question before you even have a chance to do anything other than introduce yourself. But could you start at least by explaining, given the fact that Mr. Leung could file a new motion for release today without any ban on successives? It's not like 4-4-B under the First Step Act. What would be the functional difference between allowing him to do that or us simply just remanding it? I mean, he can get in that same position before Judge Glasser. So is there some isn't there some economy of us just remanding in light of Brooker? And then you can put in this information about the vaccine. Or is there some reason why it would be preferable in your view or more appropriate in your view for us to rule in your favor, as you would suggest, and then allow Mr. Leung to file his new motion? Your Honor, I think the differences in the government's view, I think, affirmance and allowing given given the First Step Act's allowance, as you recognize, for refiling is appropriate. I would note that in Roney, which we cited in our brief, this was precisely the circumstance the panel found themselves in in that decision, which came in November, in which a change circumstance was one of the bases that the appellant was asking for a reversal of remand with instructions to grant the motion. And Judge Judges Lynch and Livingston expressed during the argument and then in the opinion, the summary order that that there is a concern about having litigants in the context of an ever changing pandemic. The ping ponging between the district courts and the Court of Appeals were circumstances. But counsel, if Judge Glasser decided the way he did because he believed he did not have authority. Because Brooker had not come down yet, but Brooker was the correct law, even when he decided, even if it hadn't come down, because that's what we do when we interpret a statute. Then wasn't that an error? And if there was an error, isn't it our job to prevent, to remand, to vacate and remand and say there was error? Now, if Judge Glasser, in fact, exercised the authority that we said that in Brooker he had, then that's a different case. And that's why I said maybe we should ask him. But if Judge Glasser did what you asked him to do, what the government asked him to do, which was to say there was no authority, then that was wrong. Not his fault because Brooker hadn't come down, but it was wrong. Then we have to vacate and remand. And from the point of view of the government or anything else, the effect is going to be the same. But technically and legally, it's the correct thing for us to do. So, Your Honor, I think two points. First, the government did make that argument. And I think the record reflects that it was rejected. And similarly, by the Brooker panel, that it was rejected in that decision as well. I think that was rejected by Judge Glasser. Yes, Your Honor. I believe so. So to answer your first question, certainly if this panel concludes that Judge Glasser deviated from a committed legal error, it would go back for him to consider. Let me be clear. Are you arguing that Judge Glasser actually exercised discretion? And because he believed, despite what the government was arguing, that he had discretion and on that basis turned it down. Is that your argument? That is our argument. And I think it's reflected in the record in large part by the fact that the fact that he considered the actual circumstances in Devens. This was not contrasting this decision in Brooker. I've watched Judge Glasser over many years, and if he thinks it's possible to have discretion, he will exercise it. He is not shy about using his discretion. On the other hand, I find the record a little bit ambiguous. The things I would point the panel to here would be Judge Glasser's explanations, both at the lengthy oral argument and in his written order, where he was he was grappling with the actual facts about the COVID-19 pandemic at the time, the circumstances of Mr. Leung, and most importantly, what the facility there was doing to mitigate that risk. He was taking the argument presented by Mr. Leung that the risk of contracting COVID-19 was so serious that he should be released head on. And unlike Brooker, unlike the judge in Brooker who was reversed, there is no suggestion that he went line by line. Did he say to you, government, I reject your argument? Did he at all indicate that the argument that you were making was incorrect? He didn't say that, Your Honor, but I believe the fact that he said that this entire case turns on whether the risk is so significant that he should be released and assess that risk and his argument and oral argument and in his opinion reflect that this is not the case like Brooker, where he felt, well, it's not in 1B1.13, so I can't hear whatever you're telling me about the pandemic. Even if he found the risk was great for Mr. Leung, he didn't think he had the power to grant him release. That's obvious in what he wrote, isn't it? I think, Your Honor, I think it's not given his ultimate conclusion that at the time, it really rested on what was happening in the facility to mitigate the risk, not that he was powerless to release him. Opposing counsel says it's obvious that he felt that he was bound. You are saying it's obvious that he was not bound. I must say, when I read that record, I think anything can be said except obvious. Can I ask you one of the possible readings of Judge Glasser's ruling is that he thought he was bound by the policy statement. But he thought that under the policy statement, he thought he had full discretion to second guess the warden's conclusion about whether COVID and the intended health circumstances constituted an extraordinary circumstance. He might not have realized that other issues could have provided a basis for relief. But, of course, the defendant didn't raise other issues. He only raised COVID. And I guess one possible reading is that he thought, yes, I'm bound by the policy statement, but COVID is perfectly fine and fits within the statement. And therefore, I am free to second guess the warden however I like, and I don't think it satisfies. So is it is it your argument that even if he thought he was bound by the policy statement, that, in fact, is not something that he thought effectively limited his discretion in this case? I think that's a reading that the record supports. And I think that is also supported by the fact that he stated he was prepared to hold and intended to hold an evidentiary hearing on this motion. And that came at the end of the oral argument where he asked for and directed the Bureau of Prisons of his own accord to supplement the record so he could make his own decision. Let me ask you one other question. Let me return to a point I made with the opposing counsel, who suggested that the government, in opposing counsel's view, takes the position that Brooker is not the law. If we were to remand this to Judge Glasser or were affirmed, but there were to be another motion filed before Judge Glasser, can you represent to us whether you would take the position before Judge Glasser that he's not bound by Brooker? Your Honor, I think our position would be we noted we believed it was not decided correctly, but noting that to preserve that we would be bound before Judge Glasser by the published controlling decision of the circuit. That's good to hear. And so with that, Your Honors, I think we would rest on our papers as to the basis for the affirmance. Thank you, Your Honors, for the time. Thank you, counsel. Let me turn back to counsel Filiu. You reserve two minutes for rebuttal. Yes. Thank you, Judge Pooler. I think that Your Honors have pointed to the fact that judicial economy would also support a full remand for reconsideration. And in terms of the record and what Judge Glasser understood about his discretion and in terms of all of the things he was willing to consider, it's clear that he was considering them in the context of whether or not it would rise to an extraordinary and compelling reason, as defined by Application Note 1A, the medical condition of the defendant. And to be clear, in our papers, we raised the fact that the court did have broader discretion. And while we addressed Mr. Leong's medical conditions and specifically his medical conditions in light of the COVID-19 pandemic, we pointed to the fact that the court did have broad discretion to grant relief and find an extraordinary and compelling reason. I think, counsel, are you saying that you suggested some reasons apart from COVID in your argument? What we suggested is that the court could look at Mr. Leong's medical conditions as a whole in conjunction with COVID, but wasn't bound to this rigorous standard of 1A. In relation to COVID, I mean, you didn't say, look, he's got a heart condition, he's going to die. You said COVID is a problem for him because he has a heart condition and diabetes and all that. It was a COVID claim. It was a COVID-centered claim. And I guess when I look at the last page of Judge Glasser's ruling, he says that his claim of entitlement to relief is bottomed upon speculation as to what could happen if the inmates at FMC in general or he in particular were to contract the coronavirus. So I guess I don't see how if hypothetically we were to remand and so to speak, let him know that the reins were loosened somewhat. How his conclusion gets you any relief under a broader conception of his discretion, because he seemed to say you've got nothing. Well, because, Your Honor, if you look at the oral argument, Judge Glasser at the point incorrectly believed that only the Bureau of Prisons had this broader discretion under 1D, application 1 note B, to say how a medical claim or a COVID claim could qualify for an extraordinary and compelling reason. And then in his order, he only- In a way, counsel, you're making an anchoring argument. You're saying that if you start out with the assumption that you do not have power in that, that is going to shape how you're going to look at everything else and that you can't help it psychologically. Well, I think it's clear that he said under application 1A, COVID and fear of contracting COVID and suffering catastrophic consequences doesn't satisfy the standard. But it's not clear because if you look at the oral argument, he said this seems like a case the Bureau of Prisons would grant after noting that they had broader discretion than what's allowable in application 1A. I mean, this is a case where Judge Glasser did not dispute that Mr. Leung wasn't at risk. This is a case where he didn't dispute the serious medical condition. So this is a case where with broader discretion, there is a reasonable possibility that Judge Glasser would find extraordinary and compelling reasons and at least move on to consider the 3553A factors. And really, that's all we're asking this court to do to remand so that Mr. Leung can have a full hearing under the appropriate legal standard. And it's the simple remedy that this court grants in cases like this where there's intervening law. And even in cases where the record, as Judge Calabresi has noted, is perhaps ambiguous as best. It's still the appropriate remedy. Thank you. Thank you, counsel. Thank you both for reserved decision. Nicely argued.